IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.   CRIMINAL ACTION NO. 3:18-00048

BRANDI MOORE

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant's Motion to Suppress Evidence. ECF No. 35. Defendant, who is charged with violating 18 U.S.C. § 641, alleges that her statement was obtained in violation of *Miranda v. Arizona*, and was not voluntary under the Fifth Amendment. *Id.* at 1. For the reasons explained below, the Court **DENIES** Defendant's Motion to Suppress Evidence.

**I. Background**

The Court makes the following factual findings based on the first motion hearing that occurred on September 5, 2018. *Tr.*, ECF No. 45. On April 4, 2017 Office of Inspector General Special Agent Tom Dominski and FBI Special Agent James Waggy arrived at Defendant's residence at approximately 10:15 a.m. to investigate Defendant's suspected use of her deceased father's Veteran's Administration ("VA") pension benefits. *Id.* at 7–10. When the agents knocked on the front door, Brad Moore—Defendant's husband—greeted them. *Id.* at 32. The agents identified themselves and told Mr. Moore that they "needed" to speak with Defendant about her father's VA checks. *Id.* at 10. Mr. Moore then told the agents that Defendant was still asleep, but that he would go back inside and tell her the agents needed to speak with her. *Id.* at 10–11. Mr. Moore then returned to the front door and gave the agents numerous excuses for why Defendant had not come outside to speak with them, including the fact that she was sleeping, needed to

shower, and that it could take her up to an hour to wake up. *Id.* at 10–12. The agents told Mr. Moore that they would wait for Defendant to wake up, shower, and come speak with them. *Id.* The agents waited for approximately forty minutes, and during their wait were periodically given "progress reports" by Mr. Moore explaining why Defendant had not come out yet. *Id.* at 11–12. Defendant eventually came outside to speak with the officers at approximately 10:55 a.m. *Id.* at 12.

When Defendant came outside, she spoke primarily with Special Agent Dominski, and she was forthright in her responses to his questions. *Id.* at 12–16. The interview was conducted outside of her home, and during the interview she admitted to defrauding the VA of benefits and took full responsibility for her criminal conduct. *Id.* During the interview, Special Agent Waggy was speaking with Mr. Moore a short distance away. *Id.* at 17. The agents noticed that there were shell casings on the porch of the home and Mr. Moore was drinking beer at the time, which caused the agents to feel uneasy and eager to remove themselves from the isolated location of Defendant's home. *Id.* at 18–19. The agents then informed Defendant that if she were to be charged and did not appear in court, the United States Marshals would have to obtain an arrest warrant. *Id.* at 16. The special agents never entered the home or restrained Defendant, and Defendant did not ever attempt to terminate the interview, ask the special agents to leave, or attempt to leave herself. *Id.* at 18.

**II. Discussion**

*Miranda* rights are triggered when a person is taken into custody, and any statement obtained through a "custodial interrogation" must be excluded unless the suspect is advised of her right to remain silent and right to an attorney, and she agrees to waive those rights. *Miranda v. Arizona*, 384 U.S. 436 (1966). Additionally, to be effective, any waiver of those rights must be made knowingly, voluntarily, and intelligently. *Id.* at 444.

The test for determining whether someone is "in custody" for *Miranda* purposes is whether, under the totality of the circumstances, the "suspect's freedom of action is curtailed to a degree associated with formal arrest." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984). The courts can look to objective facts to establish the totality of the circumstances, including the "time, place and purpose of the encounter, the words used by the officer, the officer's tone of voice and general demeanor, the presence of multiple officers, the potential display of a weapon and whether there was any physical contact between the officer and the defendant." *United States v. Day*, 591 F.3d 679, 696 (4th Cir. 2010) (internal quotations and citations omitted). Finally, when an interrogation occurs at a suspect's home, a court must consider the "extent to which the circumstances of the interrogation turned the otherwise comfortable and familiar surroundings of the home into a police-dominated atmosphere." *U.S. v. Craighead*, 539, F.3d 1073, 1083 (9th Cir. 2008) (internal quotations omitted).

Defendant first argues that she was "in custody" for Miranda purposes. *Def.'s Mot. to Suppress*, at 3. The Court disagrees. Under the totality of the circumstances, the Court believes the facts demonstrate Defendant's freedom of action was not "curtailed to a degree associated with formal arrest" when: (1) the interview was conducted at Defendant's home; (2) Defendant never asked the agents to leave; (3) the agents never threatened Defendant; and (4) the agents never told Defendant that she could not leave. In fact, the interview was conducted in such a casual setting that Defendant's husband was drinking an alcoholic beverage just a few feet away, which demonstrates that "the otherwise comfortable and familiar surroundings of the home" were not turned "into a police-dominated atmosphere." While the agents did mention the United States Marshals, this was only done to alert Defendant of the certain consequences that would result *if* she were eventually charged and did not appear in court.

At the second motion hearing on September 20, 2018, Defendant argued that the length of time it took Defendant to come out of her house made it clear that she did not want to speak with the agents, and thus left her trapped in her own home. ECF No. 49. However, agents waiting less than an hour outside of a suspect's home after the agents are *told* the suspect intends to come out and *speak* with them soon is simply good police practice. Defendant never asked the agents to leave, and Defendant never told the agents that she did not want to speak with them. Thus, she can hardly have been trapped in her own house.

Additionally, Defendant argued at the second motion hearing that the agents parked their vehicle in such a way that it was blocking Defendant's ability to get into her car and drive away. However, there is no evidence that Defendant attempted to walk away, let alone drive away, and there is no evidence that Defendant asked the agents to move their vehicle. Therefore, based on the totality of the circumstances, the Court finds that Defendant was not "in custody."

Next, Defendant argues in her motion that her statement was not "voluntary" under the Fifth Amendment because of certain factual allegations that were not testified to at the motion hearing. *Def.'s Mot. to Suppress*, at 3–4. Thus, the only facts that could demonstrate her statement was not voluntary are the same facts discussed above. The Court therefore finds that Defendant's statement was voluntary for the same reasons the Court finds Defendant was not "in custody," and thus Defendant's Motion to Suppress Evidence is denied.

### III. Conclusion

For the reasons discussed above, the Court **DENIES** Defendant's Motion to Suppress Evidence. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel and Defendant, the United States Attorney's Office, the United States Probation Office, and the United States Marshals Service.

ENTER: September 21, 2018

/s/ Robert C. Chambers
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE